# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00009-CR

**Charles McKinley, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 5020367, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Charles McKinley of manslaughter. Tex. Pen. Code Ann. § 19.04 (West 2003). After McKinley pleaded true to the enhancement allegation, the jury assessed punishment at life imprisonment. McKinley complains on appeal that he received ineffective assistance from counsel because counsel failed to question, challenge for cause, or use a peremptory challenge on a venire person who stated during the State's voir dire examination that he could not be fair and impartial in this type of case. Although the venire person was selected for the jury, for the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

On May 30, 2002, at approximately noon, McKinley was driving a green Mustang northbound on Dessau Road in northeast Austin. As the Mustang approached a curve on a hill near

the intersection of Applegate Lane and Dessau Road, McKinley lost control of the car. The car struck the concrete median, became airborne, and struck a vehicle traveling in the opposite direction on Dessau Road. When police arrived at the scene, McKinley was still positioned in the driver's seat of the Mustang with his seatbelt secured around him. The driver of the other vehicle, Heather Strihan, died at the scene of the crash.

Several witnesses to the accident testified that the Mustang was traveling at an excessive rate of speed and was weaving in and out of traffic in an erratic and reckless manner. None of these witnesses noticed any other vehicle that might have contributed to the accident.

Billy Trotter, McKinley's passenger at the time of the accident, testified that a white four-door car was to the right of their vehicle as they were driving down Dessau Road. He stated he saw the white car "jerk," and as he began to alert McKinley, the accident occurred. Trotter testified that McKinley was not driving fast and that McKinley was acting normally the morning of the collision. Trotter also testified that around midnight the night before the accident, he and McKinley had smoked a cigarette dipped in phencyclidine (PCP).

McKinley's medical records, introduced during trial, included the results of a urine drug screen administered after the collision. The test showed the presence of PCP, cocaine, and an opiate.

The jury found McKinley guilty of manslaughter and determined that he used a deadly weapon, his motor vehicle, in the commission of the offense. McKinley elected to submit his case to the jury for sentencing. He pled true to the enhancement allegation that he had been convicted of possession of a controlled substance on February 27, 2001.

2

During the punishment phase of the trial, the State introduced more of McKinley's criminal history, including a 1998 conviction for unauthorized use of a motor vehicle, 1999 and 2001 convictions for possession of a controlled substance (cocaine), and a 2001 conviction for driving while intoxicated.

The State also presented evidence of McKinley's encounters with law enforcement since the incident in question. The State established that in September 2002, approximately four months after the collision that killed Heather Strihan, the police stopped McKinley for running a stop sign. McKinley gave the arresting officer a false name and failed to present a valid driver's license or proof of insurance. In addition, he admitted to the arresting officer that "he had just finished smoking a joint." Additional evidence established that in November 2002, McKinley was pulled over for driving 89 miles per hour in a 60 mile-per-hour zone. He again gave the arresting officer a false name and was arrested for possession of a controlled substance. McKinley had in his possession a drink that contained the narcotic promethazine, which contains codeine, a substance that can impair driving.

Following presentation of this evidence, the jury assessed McKinley's punishment at life imprisonment.

**DISCUSSION**

In his sole point of error, McKinley argues that one of his trial attorneys, Craig Sandling, rendered ineffective assistance during voir dire by failing to question, challenge for cause, or exercise a peremptory strike against venire person Jeremy Stobie, who served on the jury.

During the State's voir dire examination, the prosecuting attorney asked the potential jurors if they could offer an example of a reckless act. Venire person Stobie volunteered the following: "I know somebody else mentioned it, but if you drive a vehicle while you are intoxicated, whether it be alcohol or some other controlled substance, even prescription medicine I think is reckless." Later in voir dire, the prosecutor asked the panel if anyone had been involved in an automobile accident where the other person was at fault. Stobie responded:

> Yes. I have been hit twice. Once when I was a pedestrian crossing Congress Avenue. A drunk driver ran a red light and hit me. And then once [I] got hit, rear ended and I guess down the side of my car by another drunk driver. So I don't have a lot of respect for people who use alcohol and drive a vehicle.

When asked whether he thought these drivers should have been held responsible for what they did, Stobie replied, "Absolutely."

The prosecutor then asked the prospective jurors if their experiences would affect their ability to be fair and impartial in this case. Stobie responded first by stating:

> I think so, to be honest with you. I think that by virtue of somebody being intoxicated, they are being reckless. I don't think if [sic] that's not being impartial, but I think if you have proven that, then your definition is substantiated, the first one. I don't think there could be any other circumstances that could exist that would support that argument.

During the defense's voir dire examination, Sandling directed questions to the entire panel and to specific individuals. He stated, "A lot of the things that I was going to ask you [the prosecutor] has already asked you. So again I am not going to take this longer than we should take it. . . . [M]ost of the questions I would have asked were already asked." Sandling did not direct any

4

questions specifically at Stobie nor did he challenge him for cause. The record reflects that Sandling exercised all ten of appellant's peremptory challenges but did not use one on Stobie.

McKinley argues that Sandling's conduct amounts to ineffective assistance and that trial counsel's actions during voir dire deprived McKinley of a fair trial.

In order to prevail on an ineffective assistance of counsel claim, a convicted defendant must satisfy the two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and adopted in Texas in *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). First, the defendant must show that counsel's performance was deficient, which requires showing that counsel made errors so serious that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, the defendant must show that counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88; *Thompson*, 9 S.W.3d at 812. This prejudice is demonstrated when the appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Appellant's failure to demonstrate either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

When determining if counsel's trial performance was deficient, there is a strong presumption that trial counsel's conduct fell within the range of reasonable professional assistance. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.); *see Thompson*, 9 S.W.3d at 813. On appeal, the defendant bears the burden of overcoming this strong presumption and presenting a record demonstrating that counsel's performance was not based on sound trial strategy.

5

*See Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813. An allegation of ineffective assistance must be firmly founded in the record, and the record must itself affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. When the record is silent as to possible trial strategies, the court will not speculate as to why counsel acted in a particular way. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). Any judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial counsel. *Thompson*, 9 S.W.3d at 813.

If there is no evidentiary hearing on the issue of counsel's effectiveness, the defendant's burden is difficult to meet, and counsel's efforts will rarely be deemed ineffective. *Blevins*, 18 S.W.3d at 271-72 (citing *Thompson*, 9 S.W.3d at 813). Under normal circumstances, the record on direct appeal will not be sufficient to demonstrate that trial counsel's representation was so deficient and lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Though it is possible that a single error or omission by counsel could constitute ineffective assistance, an appellate court looks to the "totality of the representation" in assessing counsel's effectiveness. *Thompson*, 9 S.W.3d at 813. In addition, counsel's effectiveness is assessed from the perspective at trial, not in hindsight. *Strickland*, 466 U.S. at 689; *Mayhue*, 969 S.W.2d at 510.

The Court of Criminal Appeals has held that trial counsel's failure to challenge a venire person who has voiced his lack of impartiality does not constitute ineffective assistance of

counsel. *See Jackson*, 877 S.W.2d at 771; *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992). In *Jackson*, a venire person in a robbery case stated that he had been a robbery victim in the past and could not be impartial. Defendant's trial counsel did not challenge the venire person for cause or use a peremptory challenge against him. As a result, the venire person sat on the jury. Because the record contained no reason or strategy for counsel's failure to challenge the venire person, the court was unable to conclude that trial counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771. Similarly, in *Delrio*, venire person Johnny Martinez told the trial court that he knew the defendant, who was on trial for a drug offense, from Martinez's work as an ex-narcotics officer. Martinez then stated that he could not be impartial in the defendant's trial. Defendant's counsel failed to challenge Martinez for cause or use a peremptory strike against him, and Martinez was seated on the jury. The court held that because the record was silent as to counsel's strategy, the record was insufficient to rebut the strong presumption in favor of effective assistance. *Delrio*, 840 S.W.2d at 447. The court noted it must "presume that trial counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). The court stated that though "we would certainly expect the occasion to be rare, we cannot say . . . that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner." *Id.* at 446.

Like *Jackson* and *Delrio*, the record in this case contains no evidence as to trial counsel's reasoning in choosing not to question, challenge for cause, or use a peremptory strike

against Stobie. If the record lacks evidence concerning trial counsel's strategy during voir dire, the court will not determine counsel's performance to be deficient under *Strickland* in this type of claim. *See Jackson*, 877 S.W.2d at 771.

McKinley asks the court to rely on *State v. Garza*, 143 S.W.3d 144 (Tex. App.—San Antonio 2004, pet. ref'd) in order to determine that counsel's representation in this case was ineffective. In *Garza*, venire person Keith Adams responded during voir dire that he could not sit fairly in a case in which the defendant was charged with aggravated sexual assault of a child. He also answered that he was in law enforcement and that there were "other reasons" why he did not want to sit on the jury. Defendant's trial counsel did not challenge Adams for cause or use a peremptory strike against him, and Adams was seated on the jury. Following his conviction, Garza filed a motion for new trial in which he alleged ineffective assistance due to trial counsel's failure to strike Adams. At the evidentiary hearing, Garza's counsel testified that he was distracted during voir dire by news that his wife had been diagnosed with cancer. He stated that he failed in his responsibility by not conducting individual voir dire and that, had he not been distracted, he would have challenged Adams for cause or used a peremptory strike against him. He confirmed that leaving Adams on the jury was not his intent and was a mistake. The trial court granted Garza's motion, finding that trial counsel's failure to strike Adams amounted to ineffective assistance. The State appealed, but the appellate court upheld the trial court's finding of ineffective assistance as the record contained counsel's explicit testimony that his failure to strike Adams was not trial strategy but a mistake. *Garza*, 143 S.W.3d at 150.

8

*Garza* does not control this case because McKinley has not produced a record similar to that presented by Garza. With no evidentiary hearing or other evidence on the record demonstrating trial counsel's lack of a reasonable strategy, McKinley is unable to demonstrate deficient performance. *Garza* is also unhelpful to McKinley's claim because, contrary to the result in that case, he seeks reversal of the trial court's judgment. As the appellate court gives strong deference to the trial court, the *Garza* appellate court's affirmance of the trial court's finding of ineffective assistance of counsel does not compel us to find ineffective assistance in the absence of such a finding by the trial court.

McKinley has not satisfied the first prong of the *Strickland* test in this case. Although McKinley filed a motion for new trial, he did not include a claim of ineffective assistance, and the trial court did not conduct an evidentiary hearing. Without an evidentiary hearing on the issue, it is extremely difficult for McKinley to overcome the presumption that counsel's conduct was within the range of reasonable professional assistance. *See Blevins*, 18 S.W.3d at 271-272. The record is silent as to counsel's motives in choosing not to question, challenge for cause, or use a peremptory strike against Stobie. We will not speculate as to counsel's reasoning. *See Mayhue*, 969 S.W.2d at 511. We must presume trial counsel was better positioned to judge the pragmatism of the particular case and make necessary decisions in the exercise of reasonable professional judgment. *See Delrio*, 840 S.W.2d at 447. Without a record to the contrary, we are unable to conclude that trial counsel's performance was deficient. As McKinley did not satisfy the first prong of the *Strickland* test, we need not examine the second prong in order to determine whether trial counsel's conduct prejudiced the defendant.

9

## CONCLUSION

We hold that, without any evidence in the record as to trial counsel's strategy or lack thereof during voir dire, the record on this direct appeal does not overcome the strong presumption that trial counsel acted within the range of reasonable professional assistance. Because McKinley does not satisfy the first prong of the *Strickland* test, he cannot establish that his right to effective assistance of counsel was violated. We affirm the judgment of the trial court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: February 17, 2005

Do Not Publish